IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Barry C. Garcia, | ) |
| | ) |
| Petitioner, | ) |
| | ) **ORDER DISMISSING § 2254** |
| vs. | ) **PETITION WITHOUT PREJUDICE** |
| | ) |
| Leann K. Bertsch, Director of the | ) |
| North Dakota Department of Corrections, | ) Case No. 1:13-cv-021 |
| | ) |
| Respondent. | ) |

On February 11, 2013, the petitioner, Barry C. Garcia ("Garcia"), filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. On March 5, 2013, Garcia filed an amended petition. For the reasons set forth below, the court orders that the amended petition be dismissed without prejudice for lack of jurisdiction.[1]

## I. BACKGROUND

### A. Prior state proceedings

Garcia was charged in state court with two offenses alleged to have occurred in West Fargo, North Dakota, on November 15, 1995: (1) aggravated assault; and (2) the murder of Cherryl Tendeland. Although Garcia was sixteen years old at the time, he was tried as an adult. The jury found him guilty of all charges. On July 2, 1996, the state district court sentenced him to life imprisonment without parole on the murder charge and a concurrent five-year term of imprisonment on the assault charge.

---

[1] Garcia filed a consent to the handling of his petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 3-4).

1

Garcia appealed his conviction and sentence to the North Dakota Supreme Court. In his appeal, he raised two challenges to his sentence of life without parole. His first argument was that:

> A sentence of life without the possibility of parole constitutes cruel and unusual punishment within the meaning of the Eighth Amendment where no statutory standards exist to provide a meaningful basis for imposing the more severe sentence as opposed to life with the possibility for parole.

State v. Garcia, Supreme Court No. 960180, Appellant's Brief filed Oct. 18, 1996, p. 21 ("Garcia State Appellate Brief") (copy filed with this court in Garcia v. Bertsch, No. A3-04-075, as Ex. 2 at Doc. No. 21). Notably, Garcia did not explicitly argue that his sentence of life without parole was categorically unconstitutional because he was juvenile. Id. Further, this is how the North Dakota Supreme Court understood Garcia's argument, when it characterized his first grounds for challenge of his sentence as follows:

> [¶ 48] Here, Garcia does not assert the maximum punishment of a life sentence without the possibility of parole is disproportional to the crime of class AA felony murder. Compare People v. Launsburry, 217 Mich.App. 358, 551 N.W.2d 460, 463-464 (1996) (life sentence without possibility of parole for 16-year-old defendant was not cruel or unusual punishment). Nor does Garcia assert, assuming for purposes of argument that Solem remains good law, see Harmelin v. Michigan, 501 U.S. 957, 994-996, 111 S.Ct. 2680, 2701-2702, 115 L.Ed.2d 836 (1991), that his sentence fails the proportionality requirement. Rather, Garcia argues the Eighth Amendment is violated here because, in authorizing the maximum penalty of life imprisonment without parole for class AA felonies, see NDCC 12.1-32-01(1), the legislature "failed to provide any guidelines or criteria to guide a judge in determining whether the most severe penalty should be imposed."
>
> [¶ 49] Garcia seeks to inject all capital punishment standards into non-capital crimes. He relies on two capital punishment cases for his argument. In McCleskey v. Kemp, 481 U.S. 279, 303, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987), the Supreme Court said, to impose the death penalty, a state must narrow the class of murderers subject to capital punishment by giving specific and detailed guidance for the sentence. The McCleskey Court held the discretion allowed decisionmakers in the Georgia capital sentencing scheme did not violate the Eighth Amendment by leaving a constitutionally significant risk of racial bias. In the other case, California v. Brown, 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987), the Supreme Court said the "Constitution . . . requires that death penalty statutes be

2

structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion." In Brown, 479 U.S. at 540, 107 S.Ct. at 838, the Court held that, during the penalty phase of a capital murder trial, an instruction requiring that jurors " 'not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling' " did not violate the defendant's Eighth Amendment rights.

State v. Garcia, 1997 ND 60, ¶¶ 48-49, 561 N.W.2d 599.

The North Dakota Supreme Court rejected Garcia's first argument for why his sentence violated the Eighth Amendment, concluding that it ignored the "clear holding" of the United States Supreme Court in Harmelin v. Michigan, 501 U.S. 957 (1991), that any standards required by the cases Garcia relied upon were limited to death penalty cases. State v. Garcia, 1997 ND 60, ¶ 50. And, while that may have disposed of the claim, the court went on to discuss the statutory factors that North Dakota courts are permitted to consider in sentencing in any criminal case and concluded that they had not been misapplied by the trial court. Id. at ¶¶ 51-52. The court then stated in conclusion:

> [¶ 53] A sentence within the minimum and maximum statutory limits is within the discretion of the trial court, and it will not be set aside unless it exceeds the statutory limit or unless the trial court substantially relied on an impermissible sentencing factor. State v. Jacobson, 419 N.W.2d 899, 903 (N.D.1988). This sentence is within the statutory range, and Garcia has not shown the trial court substantially relied on an impermissible factor in sentencing him. See State v. Manhattan, 453 N.W.2d 758, 760 (N.D.1990). We conclude Garcia's sentence to life imprisonment without parole is not cruel and unusual punishment within the meaning of the Eighth Amendment.

Id. at ¶ 53.

The second challenge that Garcia raised to his sentence on direct appeal was that the trial judge should have required a presentation of mitigating sentencing information before sentencing him to life without parole, particularly since he was juvenile. Garcia contended that sentencing him to life without parole in the absence of consideration of any mitigating sentencing information

3

violated due process and resulted in a sentence that was cruel and unusual under the Eighth Amendment. Garcia State Appellate Brief, pp. 26-29.

In considering this argument, the North Dakota Supreme Court agreed that neither Garcia (who was still a juvenile) nor his lawyer presented any evidence of mitigating circumstances and that the presentence report mentioned none. State v. Garcia, 1997 ND 60, ¶ 55. Nevertheless, the court rejected this challenge to Garcia's sentence, holding that neither the Fourteenth Amendment nor the Eighth Amendment required the trial court to affirmatively seek out mitigating sentencing information. In reaching this conclusion, the court relied upon case law placing the burden of presenting mitigating sentencing information upon the defendant, but without any discussion of whether the requirements should be different in the case of a juvenile, particularly one that is sentenced to life without parole. Id. at ¶¶ 54-59.

Following the state court denial of his direct appeal, Garcia filed a petition for writ of certiorari with the United States Supreme Court. Garcia's petition was denied on October 6, 1997. Garcia v. North Dakota, 522 U.S. 874 (1997).

On March 20, 1998, Garcia filed an application for post-conviction relief in state district court in which he asserted, among other things, that his attorney was ineffective at the time of sentencing due to the failure to present mitigating sentencing information in the form of testimony from persons willing to express an opinion as to Garcia's otherwise good character and information about his troubled upbringing, including his growing up in poverty and lack of a stable family environment. In addition, he also repeated the earlier claim made on direct appeal that the trial court had erred in not inquiring about mitigating information. The district court, in a series of

rulings, dismissed both of these claims as well as the rest of Garcia's petition. See Garcia v. Bertsch, No. A3-04-075, 2005 WL 4717675, at *4 (D.N.D. Sept. 12, 2005).

Garcia appealed the denial of his petition for post-conviction relief. After additional proceedings before the district court, the North Dakota Supreme Court affirmed the district court's denial of Garcia's petition for post-conviction relief. Garcia v. State, 2004 ND 81, 678 N.W.2d 568. With respect to the ineffective assistance claim, the North Dakota Supreme Court concluded, somewhat contrary to what it had stated in its earlier opinion on direct appeal, that there was some mitigating information presented in the presentence report. Id. at ¶20. The court then went on to conclude that, even if counsel was ineffective in not presenting more, it would not have made a difference since the record was clear that the sentencing judge, in not providing an opportunity for parole in Garcia's sentence, focused primarily upon the heinous nature of the offense and the lack of any apology or acceptance of responsibility by Garcia. Id. at ¶¶ 18-20.

### B. Garcia's first § 2254 petition

On May 3, 2004, Garcia filed a petition for habeas corpus relief in the United States District Court for the Southern District of Illinois. He asserted eight grounds for relief, including (1) the claim of ineffective assistance of counsel in failing to present mitigating sentencing information asserted in his state postconviction proceeding and (2) the claim that his sentence of life without parole violated the Eighth Amendment based on the twin arguments asserted in his state direct appeal, *i.e.*, the lack of statutory standards for the imposition of such a sentence and the failure of the sentencing judge to seek out mitigating sentencing information.

Garcia's petition was transferred to this court, which dismissed Garcia's petition on the merits with prejudice. See Garcia v. Bertsch, Case No. 3:04-cv-075, Doc. No. 40 (adopting Report

and Recommendation at Doc. No. 34 and reported at Garcia v. Bertsch, 2005 WL 4717675). With respect to the ineffective assistance claim, the court concluded that the North Dakota Supreme Court's determination that Garcia had not proved prejudice was not an unreasonable one, given the reasons expressed by the trial judge for his sentence. Garcia v. Bertsch, 2005 WL 4717675, at ¶¶ 22-24. The court did, however, grant a certificate of appealability on the issue. As for the Eighth Amendment claim, the court concluded that the North Dakota Supreme Court's denial of Garcia's two arguments was neither contrary to nor an unreasonable application of prior United States Supreme Court precedent and did not grant a certificate appealability as to that claim. Id. at ¶¶ 32-33.

Garcia appealed on the points for which the court granted a certificate appealability, and the Eighth Circuit affirmed the court's dismissal of his habeas petition. Garcia v. Bertsch, 470 F.3d 748 (8th Cir. 2006). With respect to the ineffective assistance claim, the Eighth Circuit agreed that the North Dakota Supreme Court's resolution of that issue based on lack of prejudice was not objectively unreasonable. Id. at 756-57.

Garcia next filed a petition for writ of certiorari, which was denied by the United States Supreme Court on June 11, 2007. Garcia v. Bertsch, 551 U.S. 1116 (2007).

### C. Garcia's present (second) petition for § 2254 relief

On February 11, 2013, Garcia, proceeding *pro se*, commenced this proceeding by filing a second petition for § 2254 relief. (Doc. No. 2). In the petition, Garcia appears to have claimed that his sentence of life without parole was cruel and unusual because he was juvenile, citing Miller v. Alabama, __ U.S. __, 132 S.Ct. 2455 (2012).[2]

---

[2] In Miller v. Alabama, the majority applied the Eighth Amendment categorical proportionality analysis that the Supreme Court had previously reserved for death-penalty cases, and more recently applied in Graham v. Florida, __

In addition, Garcia went on to express his belief that the sentencing judge did not allow for the possibility of parole in his sentence because he had failed at the time of sentencing to speak out and express remorse for what he had done. He stated the reasons why he did not speak out were his youth and that he was advised by his attorney not to speak. Because of these additional allegations, it was unclear whether Garcia was attempting to assert a Sixth Amendment claim of ineffective assistance of counsel in addition to the Eighth Amendment claim that his sentence was cruel and unusual because he was juvenile.

Before the court could screen Garcia's petition, he filed an amended petition, which is even more problematic in terms of what is being claimed. (Doc. No. 6). Based on its particular wording, it is now unclear whether Garcia is claiming that his sentence of life without parole was categorically cruel and unusual because he was juvenile and if not, what exactly his Eighth Amendment claim is based on his citation to Miller v. Alabama, supra. Also, it remains unclear whether Garcia is attempting to make any other claims, including a claim of ineffective assistance of counsel at the time of sentencing.[3]

---

U.S.__, 130 S.Ct. 2011 (2010), to sentences of life without parole for juveniles convicted of non-homicide offenses, to mandatory sentences of life without parole for juveniles in homicide cases. This case is different from Miller v. Alabama in that the sentencing judge here was not required by state law to impose a sentence that denied the possibility of parole when he sentenced Garcia, *i.e.*, he could have sentenced him to life imprisonment with the possibility of parole. See N.D.C.C. § 12.1-32-01. That being said, the reasons given by the controlling opinions in Graham and Miller for why juveniles should be treated differently from adults in this context arguably could be extended to life sentences for juveniles in homicide cases that foreclose a later opportunity for parole and whether the Supreme Court so concludes in future cases remains to be seen. E.g., Miller v. Alabama, 132 S.Ct. at 2489-90 (Alito & Scalia, JJ., dissenting) ("Having held in Graham that a trial judge with discretionary sentencing authority may not impose a sentence of life without parole on a minor who has committed a nonhomicide offense, the Justices in the majority may soon extend that holding to minors who commit murder. We will see.").

[3] If at some point, Garcia intends to make an additional claim, such as for ineffective assistance of counsel, he would need to be more specific, including alleging his Sixth Amendment rights were violated or citing to a case that invokes the governing federal constitutional right.

## II.     DISCUSSION

The court must determine as a threshold matter whether it has jurisdiction to hear Garcia's current amended § 2254 petition given his earlier 2004 petition and the requirements of 28 U.S.C. § 2244(b)(3)(A), which is a part of the Antiterrorism and Effective Death Penalty Act or "AEDPA." Under § 2244(b)(3)(A), any petition that is "second or successive" must be approved by the appropriate federal court of appeals (in this case the Eighth Circuit) before the petition can be considered by a federal district court.[4]  See e.g., Bell v. North Dakota, 567 F. Supp. 2d 1130, 1135 (D.N.D. 2008) ("It is well-established that if a prisoner files a successive habeas corpus petition in federal district court without having obtained authorization to do so from the Court of Appeals, the district court must dismiss the case for want of subject matter jurisdiction."); cf. Felker v. Turpin, 518 U.S. 651, 656-58 (1996).

Because AEDPA does not define "second or successive," a number of federal circuit courts, including the Eighth Circuit, have held that courts must look to pre-AEDPA abuse-of-writ principles. Crouch v. Norris, 251 F.3d 720, 723-725 (8th Cir. 2001); Vancleave v. Norris, 150 F.3d

---

[4] Section 2244(b), Title 28, reads as follows:
(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) *Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.*
(italics added).

926, 927-928 & n.2 (8th Cir. 1998); see generally Benchoff v. Colleran, 404 F.3d 812, 815-817 (3d Cir. 2005). Applying these principles, a habeas petition will generally be considered "second or successive" if the claims were presented or could have been presented in an earlier petition that has been denied on the merits. Crouch v. Norris, 251 F.3d at 725; see also Benton v. Washington, 106 F.3d 162, 164 (7th Cir. 1996). However, a habeas petition will generally not be considered "second or successive" when the prior petition has been dismissed without prejudice for non-merit reasons (e.g., failure to exhaust state remedies, failure to comply with technical requirements, rejection of the petition because it is unintelligible, etc.) or when the claims could not have been included in the prior petition because the challenged conduct had not yet occurred. Id.

In this case, the claims asserted by Garcia in his 2004 petition were denied on the merits. Furthermore, at the time he filed his 2004 petition, Garcia knew that he had been sentenced to life without the possibility of parole for conduct that occurred when he was juvenile and knew the trial court's reasoning for imposing that sentence. Thus, for AEDPA purposes, Garcia's instant claim or claims were ripe at the time he filed his initial petition. Riley v. Palakovich, No. 05-CV-4541, 2012 WL 4473207, at **3-4 (E.D. Pa. Aug. 30, 2012) ("Although the United States Supreme Court did not declare mandatory sentences of life without parole for juveniles unconstitutional until June 25, 2012, a change in controlling law does not make a previously known, but unasserted claim unripe."). Consequently, the amended petition now before the court is clearly a "second or successive" petition within the meaning of § 2244(b), and the court is required to dismiss it. See id.; see also Lohnes v. Weber, No. CIV. 12-4196, 2013 WL 164243, at *1 (D.S.D. Jan. 15, 2013) (adopting magistrate judge's recommendation at 2012 WL 6863212 (D.S.D. Dec. 3, 2012), and dismissing a defendant's habeas petition without prejudice pursuant to 28 U.S.C. § 2244(b)). In

9

other words, if Garcia wishes to proceed with a second petition for habeas relief, he must first obtain federal circuit court approval, which for him here would be the United States Court of Appeals for the Eighth Circuit.

## III. CONCLUSION

Garcia's amended petition seeking relief pursuant to 28 U.S.C. § 2254 (Doc. No. 6) is **DISMISSED WITHOUT PREJUDICE** because of lack of subject matter jurisdiction. [5] Further, if Garcia does proceed to seek the Eighth Circuit's permission, he may want to consider preparing a new petition that more clearly expresses what his claims are, including whether he is arguing that a discretionary sentence of life without parole for a juvenile violates the Eighth Amendment based on an extension of the reasoning employed in Miller v. Alabama, supra, and the cases cited in that opinion, and/or whether he is also attempting to bring a new claim of ineffective assistance of counsel at the time of sentencing in violation of the Sixth Amendment based on the alleged advice to remain silent at sentencing.

**IT IS SO ORDERED.**

---

[5] Based on the history of Garcia's prior proceedings as set forth earlier, there may be some question whether he has properly exhausted in the state courts the claims he may be attempting to assert in his present petition. See e.g., Lohnes v. Weber, 2013 WL 164243 at *1 (finding two procedural barriers preventing the court's consideration of a petitioner's Miller v. Alabama claim: (1) his failure to exhaust his state remedies; and (2) his failure to obtain the Eighth Circuit's permission to file a second or successive petition). As a general rule, a petitioner seeking a writ of habeas corpus under § 2254 must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); see Cone v. Bell, 556 U.S. 449, 465 (2009). The doctrine of exhaustion requires "as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995) (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982)). Further, while the defenses of res judicata and misuse of process under N.D.C.C. § 29-32.1-12(2)-(3) are generally invoked to bar the filing of multiple state petitions for postconviction relief in North Dakota, there is an exception under the statute if the petitioner has a justifiable excuse for not having raised a claim earlier. And, it may be that the North Dakota Supreme Court would consider as a justifiable excuse the change in landscape governing the criminal sentencing of juveniles as enunciated by the United States Supreme Court in Roper v. Simmons, 543 U.S. 551 (2005), Graham v. Florida, 130 S.Ct. 2011 (2010), and Miller v. Alabama, supra, all of which were decided after the North Dakota Supreme Court denied Garcia's direct and post-conviction appeals.

Dated this 12th day of April, 2013.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court